UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA M. o/b/o J.S.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00292 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Lisa M. ("Plaintiff") brings this action on behalf of J.S., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 7) is denied.

## BACKGROUND

On March 23, 2018, Plaintiff protectively filed an application for SSI on behalf of J.S., a child under the age of 18. (Dkt. 6 at 19, 201-07).[1] Plaintiff alleged J.S.'s disability began on October 1, 2017. (*Id.* at 19, 201). Plaintiff's application was initially denied on August 30, 2018. (*Id.* at 19, 87-92). On July 9, 2020, Plaintiff and J.S. appeared at a telephone hearing before administrative law judge ("ALJ") Barry Best. (*Id.* at 36-67). On September 2, 2020, the ALJ issued an unfavorable decision. (*Id.* at 19-30). Plaintiff requested Appeals Council review, and her request was denied on January 4, 2021, making the ALJ's decision the Commissioner's final determination. (*Id*. at 5-8). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id*. (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations, quotation marks, and citations omitted).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether J.S. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that J.S. was an older infant/toddler on March 23, 2018, the date the application was filed, and was a preschooler on the date of the written determination. (Dkt. 6 at 20). At step one, the ALJ determined that J.S. had not engaged in substantial gainful activity since March 23, 2018, the application date. (*Id*.).

At step two, the ALJ found that J.S. suffered from the severe impairment of: speech and language delay. (*Id*.).

At step three, the ALJ found that J.S. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). Similarly, the ALJ found that J.S. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id*.). In making this determination, the ALJ considered J.S.'s functioning in each of the above-mentioned six domains and concluded that J.S. had a less than marked limitation in the area of acquiring and using information; no limitation in attending and completing tasks; a marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and no limitation in health and physical well-being. (*Id*. at 22). Accordingly, the ALJ found that J.S. was not disabled as defined in the Act. (*Id*. at 29).

## II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ erred in his assessment of a questionnaire completed by J.S.'s kindergarten teacher. For the reasons set forth below, the Court disagrees.

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019). Further, although an ALJ is not required to expressly discuss and reconcile every shred of evidence in the administrative record, he cannot cite only the evidence that supports his conclusions. *Id*. In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional

equivalence, adjudicators must consider 'all of the relevant evidence,' and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.,* No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (quoting *Carrera v. Colvin*, No. 1:13-cv-1414 (GLS/ESH), 2015 WL 1126014, at *3 (N.D.N.Y. Mar. 12, 2015)). This approach "requires the ALJ 'to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain.'" *Id.* (quoting *Carrera*, 2015 WL 1126014, at *3).

A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination. It is not the function of this Court to re-weigh evidence or consider *de novo* whether J.S. is disabled. *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine *de novo* whether [a claimant] is disabled." (alteration in original) (internal quotation and citation omitted)). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982))).

The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence.

In his decision, the ALJ reviewed J.S.'s medical records as well as the medical opinion evidence. Specifically, he addressed an evaluation by a State agency medical consultant, who opined that J.S. had a less than marked limitation in the area of acquiring and using information; no limitation in attending and completing tasks; a marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself/herself; and no limitation in health and physical well-being. (*Id.* at 78-85). The ALJ found the opinion persuasive. (*Id.* at 23). The ALJ explained that the consultant "provided extensive rationales to support his findings, citing to specific evidence of record and resolving inconsistencies in the record." (*Id.*). The ALJ noted that the consultant "assessed specific functional limitations and abilities consistent with the findings on the speech and language evaluation, the pediatric well visits, and the nature and scope of itinerant services," and the "objective findings are consistent with [J.S.'s] subjective symptoms and concerns." (*Id.* at 23-24).

The ALJ also found the opinion of the consultative examiner, Dawn Grasso-Megyeri, M.S., CCC-SLP, to be generally persuasive. (*Id.* at 24, 285-89). Ms. Grasso-Megyeri identified diagnoses of severe expressive language delay, moderate receptive language delay, and moderate articulation delay. (*Id.* at 289). She noted that J.S. had difficulty understanding and following directions and making his needs and wants known. (*Id.* at 288). She opined that his "delay in language coupled with his articulation delay is

considered significant as it is likely to impact on his educational success and his ability to communicate with his peers." (*Id.*).  She recommended speech and language therapy services and judged him to have a good prognosis. (*Id.* at 289).  The ALJ explained that he found the opinion to be generally persuasive because although "the consultative examiner did not assess precise function-by-function limitations, her opinion is supported by the objective testing results and is consistent with the opinion of the State agency medical consultant." (*Id.* at 24).

The ALJ also considered statements from Plaintiff.  He concluded that the degree of J.S.'s limitations described by Plaintiff were not substantiated in the objective findings and overall evidence of record which reflect "no evidence of speech and language services or subjective complaints or concerns to the pediatrician." (*Id.* at 24).  In the decision, the ALJ noted that J.S.'s pediatric treatment records from Kenwood Pediatrics reflect that at J.S.'s 2017 and 2019 well visits, Plaintiff did not express any concerns with J.S.'s speech and language. (*Id.* at 282-84, 306-08).  At the 2019 visit, the records reflect that his speech was 75% understandable. (*Id.* at 306).  And his speech was identified as age-appropriate at doctor visits in June and August of 2019. (*Id.* at 310, 313).

As noted, Plaintiff specifically challenges the ALJ's assessment of a questionnaire from J.S.'s kindergarten teacher, Ann Reybeick, completed on March 4, 2020. (*Id.* at 266-73).  Ms. Reybeick indicated that she had known J.S. for four months and saw him approximately four days a week for all subjects. (*Id.* at 266).  She assessed his reading, math, and written language levels as "well below" current instructional levels. (*Id.*).  She noted that he had an unusual degree of absenteeism and was in school on average four days

per week. (*Id.*). Ms. Reybeick rated J.S. as having a very serious problem in nearly all areas of acquiring and using information. She explained that "[J.S.] is not capable of working independently" and works "one-on-one or in a small group." (*Id.* at 267). She assessed him as having difficulty with many areas of attending and completing tasks. She explained that he does not complete his own homework and "has a hard time keeping his hands to himself and is constantly distracting others." (*Id.* at 268). She also indicated that he "has a hard time following directions [without] repetition." (*Id.*). In interacting and relating with others, Ms. Reybeick noted J.S.'s challenges with using adequate and appropriate language and conversation. (*Id.* at 269). She explained that he rarely initiates conversation and "is very hard to understand." (*Id.*). In moving about and manipulating objects, Ms. Reybeick opined that J.S. had a serious problem demonstrating strength, coordination, and dexterity in activities. (*Id.* at 270). She explained that he "has difficulty holding a pencil and writing" and with "cutting/holding scissors and coloring." (*Id.*). Ms. Reybeick noted that J.S. had only a slight problem in two areas of caring for himself and no problem in the remaining areas of this domain. (*Id.* at 271).

In his decision, the ALJ described his assessment of Ms. Reybeick's statement as follows:

> Similarly, the undersigned finds the statements made by the claimant's teacher, Ann Reybeick, do not have probative value. Ms. Reybeick completed the forms after knowing the claimant for four months. She also noted a high degree of absenteeism and averaged that the claimant attended school four days a week. Moreover, Ms. Reybeick assessed significant limitations in multiple areas of function; however, these limitations are not supported by the objective medical evidence or the subjective complaints to the pediatrician. Furthermore, there are no academic records to support her limitations.

(Dkt. 6 at 24).

Plaintiff contends that the ALJ's reasons for rejecting Ms. Reybeick's opinions were not supported by substantial evidence and advances several reasons for this contention.

First, Plaintiff argues that it is inconsistent for the ALJ to discredit Ms. Reybeick's opinions in part because she only taught J.S. for a period of four months, while at the same time crediting the opinion of a state agency review pediatrician who never even met J.S. It is not clear that the ALJ was discrediting the opinion based on the length of the relationship or if he was just re-stating how long Ms. Reybeick had worked with J.S. But even if he was affording Ms. Reybeick's opinions less credit because of how much time she had spent with J.S., that alone is not error. While a teacher's opinion can be a valuable source of information to the ALJ, a teacher, unlike a state agency review pediatrician, is not considered an acceptable medical source under the Regulations. *See Lucsheena N. o/b/o I.A.K.W. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6760-MJR, 2022 WL 4545693, at *3 (W.D.N.Y. Sept. 29, 2022) ("The SSA classifies teachers as 'non-medical sources' and has explained that they are 'valuable sources of evidence for assessing impairment severity and functioning.'" (quoting Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006)). Thus, under the circumstances, there was nothing inconsistent or improper about the ALJ finding a medical source opinion more persuasive than that of a teacher.

Next Plaintiff contends that the ALJ wrongly found Ms. Reybeick's opinions inconsistent with other evidence of record, including subjective complaints Plaintiff made to J.S.'s pediatrician. But it was not inappropriate for the ALJ to consider the lack of consistency between Ms. Reybeick's opinion and the pediatric records. As noted, the

pediatric treatment records do not document concerns about J.S.'s speech and language and instead, reflected that J.S.'s speech was appropriate for his age. (*Id.* at 310, 313). Nor were the pediatric records uninstructive simply because they reflect visits before J.S. entered kindergarten, as Plaintiff suggests, or because the ALJ did not discuss every complaint contained therein. Plaintiff's arguments on this point amount to a disagreement with how the ALJ weighed the evidence, which is not for this Court to resolve.

Finally, Plaintiff argues that if the ALJ concluded that there were no academic records to support Ms. Reybeick's limitations, then the ALJ should have attempted to develop the record to obtain such records. While it is undisputed that "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record," *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), the responsibility to develop the record is not limitless. Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17-CIV-5392-GBD-KHP, 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016

WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted); *Kaliegh O. on behalf of S.S.T. v. Berryhill*, No. 5:17-CV-960 (CFH), 2018 WL 4054098, at *9 (N.D.N.Y. Aug. 24, 2018) (holding that plaintiff must establish "beyond conclusory assertions" that there was a gap in the record precluding the ALJ from making his determination).

Here, Plaintiff's counsel requested a complete set of educational records from J.S.'s school (Dkt. 6 at 262) and attendance records were provided in response to that request (*id.* at 259-61).  Plaintiff never advised the ALJ that there were any records outstanding at the hearing or at any time afterwards.  Although there was testimony that there had been discussion of J.S.'s potential future placement in a special education class or obtaining an IEP, because neither was in place at the time of the hearing, Plaintiff's argument that additional records might exist is speculative.  Accordingly, the Court cannot conclude that there was an obvious gap in the record to trigger the ALJ's duty to further develop the record.

In sum, Plaintiff's arguments do not require remand.  It is not the function of this Court to re-weigh evidence, which is what Plaintiff urges.  *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19CV9253(AT)(BCM), 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether

substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *report and recommendation* adopted, No. 19CIV9253(AT)(BCM), 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021); *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, No. 6:16-CV-1397 (WBC), 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) ("Therefore, although Plaintiff cites to evidence which supported her contention that Claimant had behavioral problems, the ALJ ultimately concluded such problems were not as severe as alleged. The ALJ cited substantial evidence in the record to support his determination and therefore the ALJ's assessment of the evidence is upheld."). Accordingly, because the Court finds that the ALJ's finding was grounded in and supported by the evidence of record, there is no basis to disturb his conclusions.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 12, 2023
 Rochester, New York